IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PROFESSIONAL STAFF ORGANIZATION-
OREGON, a domestic nonprofit in Oregon,

        Plaintiff,

                                    3:14-CV-01081-PK

    v.                              OPINION AND ORDER

OREGON EDUCATION ASSOCIATION,
a domestic nonprofit in Oregon,

        Defendant.

PAPAK, Magistrate Judge:

## INTRODUCTION

In this action to compel enforcement of an arbitration award, Defendant Oregon

Education Association ("Defendant") moves, pursuant to Federal Rule of Civil Procedure

("Rule") 12(b)(6), to dismiss Plaintiff Professional Staff Organization–Oregon's ("Plaintiff")

complaint for failure to state a claim upon which relief can be granted. For the reasons that

follow, OEA's motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I.    Factual Background

PSO and OEA are both labor unions and parties to a collective bargaining agreement ("Agreement") which was effective from July 1, 2011 through June 30, 2014. Plaintiff's Exhibit A, #1-1. The Agreement contains a grievance procedure which requires final and binding arbitration to resolve disputes. Plaintiff's Exhibit A, #1-1, 10–13.

On October 16, 2013, Arbitrator Richard Ahearn presided over a dispute related to OEA's alleged failure to staff several regional offices as required under the Agreement. Complaint, #1, ¶ 7. The issues with which Ahearn dealt were (1) whether OEA violated the Agreement when making staff cuts in various field offices, "thereby failing to maintain a 1:1 professional staff to associate ratio," and (2) what remedy such a failure would require. Plaintiff's Exhibit B, #1-2, 3; Motion, #7, 4. The "1:1 professional staff to associate ratio" requirement derives from Article 19.3B of the Agreement. Plaintiff's Exhibit A, #1-1, 25. OEA employs professional staff, called "Uniserv consultants" or "PSOs," who are represented by PSO. Defendant also employs associate staff, called "ASOs." Motion, #7, 4. Article 19.3B requires a 1:1 PSO/ASO ratio in field offices staffed with two or fewer PSOs, which imposes upon OEA a minimum acceptable employment number of staffed ASOs at each of its offices. Plaintiff's Exhibit A, #1-1, 25.

On January 9, 2014, Ahearn issued an opinion and rendered an award ("Award") in favor of PSO, finding OEA "had violated the collective bargaining agreement and order[ing] OEA to staff the regional offices as required under that agreement." Complaint, #1, ¶ 8; Plaintiff's Exhibit B, #1-2. In his opinion, Ahearn relied on the ratio requirement in Article 19.3B of the Agreement and found that it effectively modified Article 4, which reserves OEA's "right to manage its operations and to direct its employees within applicable law." Plaintiff's Exhibit B,

#1-2, 10.

On February 26, 2014, PSO requested Ahearn's intervention to address OEA's alleged noncompliance with the Award. *Id.* ¶ 10. PSO claimed that OEA "refused to implement the arbitration award" by "fail[ing] to assign any ASO staff to the field offices named in the award." *Id.* ¶ 9; Defendant's Motion, #7, 7. In his response on March 3, 2014, Ahearn acknowledged that

> [T]he . . . arbitration was limited to determining whether the Parties' mutual intent . . . required OEA to maintain the longstanding one-to-one ratio in field offices with two or fewer consultants. Based upon my conclusion that the Parties did establish such an obligation, in the Award I directed OEA to assign a full-time ASO to each of the five field offices that were not in compliance with the required ratio.

Plaintiff's Exhibit C, #1-3, 1.

Ahearn further revealed that OEA's rationale for failing to meet the one-to-one ratio in fact derives from an ongoing plan to close the five offices named in the Award after consolidating them with other existing offices and to then assign additional staff where necessary to meet the ratio requirement. *Id.*

Ahearn acknowledged PSO's allegations that OEA failed to assign any staff to those field offices named in the Award. *Id.* However, Ahearn refused to step in to resolve the conflict, as enforcement of awards is beyond an arbitrator's normal jurisdiction. *Id.* Ahearn also refrained from addressing OEA's plan to consolidate and close the field offices because "any matter related to these reorganization issues are beyond the scope of the submission that was presented . . . in the arbitration." *Id.* at 2.

## II. Procedural History

On July 7, 2014, PSO filed a complaint with this Court alleging that OEA's continued

Page 3 - OPINION AND ORDER

failure to comply with the Award violates the arbitration provisions in the Agreement.

Complaint, #1, ¶¶ 14–15. In its complaint, PSO requests an order compelling OEA to comply

with the Award as well as a preliminary injunction preventing OEA from further surrendering

leases or selling the facilities of those offices mentioned in the Award. Complaint, #1, 4;

Plaintiff's Exhibit B, #1-2.

On October 28, 2014, the court heard oral argument on OEA's motion to dismiss. Both

parties submitted additional filings on October 27 and agreed to enter that information into the

record. PSO submitted declarations from several ASOs (#21–25) for whom it acts as

representative. OEA submitted a declaration detailing the status of the field offices at issue

(#26). OEA's declaration reveals that the Chintimini field office remains open and is staffed per

the ratio, the Eastern Oregon and Roseburg offices have been closed, and the Klamath Lake and

North Bend offices have remained open with no update regarding the staffing ratio. Dec. of

Robert Sande, #26, 2. The briefings regarding OEA's motion to dismiss are fully submitted and

ready for decision.

## DISCUSSION

### I.    Documents Considered in Ruling on the Current Motion

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained

in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial

notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The court may also consider

documents "on which the complaint 'necessarily relies' if; (1) the complaint refers to the

document; (2) the document is central to plaintiff's claim; and (3) no party questions the

authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448

(9th Cir. 2006) (citations omitted). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). In addition, the court may take judicial notice of documents that are "matters of general public record." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

Here, PSO attached several documents to its complaint, including the parties' collective bargaining agreement, an Opinion and Award issued by Arbitrator Richard Ahearn, and a subsequent letter from Ahearn in response to the parties' inquiries regarding the award. Upon review, the court concludes that these documents are central to PSO's claim, and OEA does not dispute the documents' authenticity. Thus, I will consider them for purposes of the current motion.

## II.    Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's

Page 5 - OPINION AND ORDER

allegations of material fact as true and construe them in the light most favorable to the

nonmoving party. *Keams v. Tempe Tech. Inst., Inc.*, 39 F.3d 222, 224 (9th Cir. 1994). All

reasonable inferences from the factual allegations must be drawn in favor of the plaintiff.

*Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n. 2 (9th Cir. 2008). Moreover, the

"court may generally consider only allegations contained in the pleadings, exhibits attached to the

complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756,

763 (9th Cir. 2007).

## III.    Interpretation, Review, and Remand of an Arbitration Award

"Section 301 of the Labor Management Relations Act authorizes the district courts to

enforce or vacate an arbitration award entered pursuant to a collective bargaining agreement."

*Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc., of Ariz.*, 84 F.3d

1186, 1190 (9th Cir. 1996) (citing 29 U.S.C. § 185(a) and *Sheet Metal Workers Int'l Ass'n, Local*

*Union No. 150 v. Air Sys. Eng'g, Inc.*, 948 F.2d 1089, 1091 (9th Cir. 1991)); *see also Hines v.*

*Anchor Motor Freight, Inc.*, 424 U.S. 554, 561–62 (1976) (discussing Section 301 of the Labor

Management Relations Act). However, "judicial scrutiny of an arbitrator's decision is extremely

limited," and arbitration awards made pursuant to a collective bargaining agreement are entitled

to considerable deference. *Sheet Metal Workers Int'l Ass'n, Local No. 359, AFL-CIO v. Ariz.*

*Mech. & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988); *see also Sheet Metal Workers Int'l*

*Ass'n Local Union #420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 744 (9th Cir. 1985).

If, however, the arbitration award is ambiguous "in its scope or application," the court

cannot enforce the award. *Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, No. 13-

10852, 2014 WL 3703868, at \*5 (5th Cir. July 25, 2014) (quoting *Brown v. Witco Corp.*, 340

F.3d 209, 216 (5th Cir. 2003); *see also Kinney Air Conditioning*, 756 F.2d at 745. In such circumstances, if the court cannot resolve the ambiguity by examining the arbitrator's opinion and the record, the court may remand the matter to the arbitrator for clarification and interpretation. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, & Local Union 193-G v. PPG Indus., Inc.*, 751 F.3d 580, 585 (7th Cir. 2014); *Hanford Atomic Metal Trades Council, AFL-CIO v. Gen. Electric Co.*, 353 F.2d 302, 307 (9th Cir. 1965) (noting that, where the arbitration committee's opinion required clarification, the district court properly remanded the matter to the arbitration committee).

District courts may resubmit an existing arbitration award to the original arbitrator for interpretation or amplification, but err in substituting their own interpretation of an arbitration award for that of the arbitrator. *Sunshine Mine Co. V. United Steelworkers of America, AFL-CIO, CLC*, 823 F.2d 1289, 1295 (9th Cir. 1987); *Locals 2222, 2320-2327, International Brotherhood of Electrical Workers v. New England Telephone & Telegraph Co.*, 628 F.2d 644 (1st Cir. 1980).

## III.   Analysis

In its motion, OEA moves to dismiss PSO's claims on several grounds. OEA primarily asserts that PSO's claim alleging OEA's non-compliance with the Award lacks legal merit because it is based on an untenable interpretation of the Award, the Agreement, and Arbitrator Ahearn's response letter. OEA also argues that PSO's claim alleging OEA's restructuring plan is in violation of the Agreement should be dismissed for failure to exhaust the grievance procedures outlined in the Agreement.

### A.   Legal Merit of Plaintiff's Claim

OEA argues that, in attempting to enforce the Award against it, PSO improperly interprets the provision therein stating that "OEA shall assign a full-time ASO staff person to each of the following field offices: Chintimini, Eastern Oregon, Klamath Lake, North Bend and Roseburg." Plaintiff's Exhibit B, #1-2, 26. OEA reads that sentence to contain a remedial directive, requiring that

> *if* OEA should continue to maintain and operate the five field offices and to staff each office with a full-time professional staff person, *then* OEA must assign a full-time associate staff person to each office to assist the professional staff person with the work he/she has been tasked to perform out of that office.

Motion, #7, 10.

OEA correctly maintains that a plain language reading of the directive does not require continued operation of the field offices, although it does suggest that Arbitrator Ahearn likely assumed that OEA would continue to maintain and staff the field offices at the agreed upon ratio. *Id.* OEA states, however, "an assumption that a party will proceed in a certain manner is a far cry from a remedial directive that it do so." *Id.* Although PSO brings this action to prevent a favorable arbitration decision from becoming a pyrrhic victory, the Award simply cannot be interpreted to require the offices to remain open indefinitely or to require staffing of already closed offices. Without any clear interpretation to the contrary, those choices are within the ambit of OEA's management rights and based on a correct interpretation of the Award's directive.

Particularly relevant in resolving this dispute is the fact that Arbitrator Ahearn, in his March 3 letter responding to the parties' inquiry on this conflict, states that

> [W]ith regard to OEA's announced plans for consolidating offices and closing the offices mentioned in the award, any matters related to

Page 8 - OPINION AND ORDER

> these reorganization issues are beyond the scope of the submission
> that was presented to me in arbitration. As these subsequent
> developments do not turn on the considerations that were at issue in
> my Opinion and Award, they are not appropriate for consideration in
> the . . . ratio grievance that constituted the Opinion and Award.

Pl.'s Ex. C, #1-3. This clarifies that Arbitrator Ahearn did not anticipate OEA's reorganization

and consolidation plans or office closures when issuing the Award. To that end, the relevant

substantive directive contained in the Award reads: "OEA shall assign a full-time ASO staff

person to [the five field offices]." Pl.'s Ex. B, #1-2, 26. A plain language reading of this, further

informed by Ahearn's letter, shows that Ahearn did not intend to require OEA to keep open the

five listed offices. Courts must defer to the arbitrator's award if it "draws its essence" from the

collective bargaining agreement or represents a plausible interpretation of the contract in the

context of the parties' conduct. *Francesco's B., Inc. v. Hotel & Restaurant Employees &*

*Bartenders Union, Local 28*, 659 F.2d 1383 (9th Cir. 1981). Because the Award is undisputedly

a plausible interpretation of the Agreement, "judicial inquiry ceases and the award must be

enforced." *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Ariz. Mech. & Stainless, Inc.*, 863

F2.d 647, 653 (9th Cir. 1988). However, the "arbitrator's interpretation of the scope of issues

submitted to him is entitled to the same deference" as the Award itself. *Sheet Metal Workers*

*Int'l Ass'n, Local No. 359 v. Madison Industries Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir.

1996).

     Thus, because the Award did not bind OEA to keep the named field offices open, PSO's

interpretation of the Award is incorrect. For these reasons, the non-conclusory aspects of PSO's

allegations, combined with the other factual inferences and material provided with the complaint,

are not plausibly suggestive of a claim entitling PSO to relief regarding the Eastern Oregon and

Page 9 - OPINION AND ORDER

Roseburg field offices, which are both closed. Dec. of Robert Sande, #26, 2. I therefore grant OEA's motion to dismiss PSO's claim to the extent it urges OEA's continued operation or additional staffing of those offices. Additionally, I grant OEA's motion regarding the Chintimini office, which is already in compliance with the Award. *Id.*

However, I acknowledge that the grievance process did in fact culminate in a directive that OEA staff the named field offices according to the 1:1 ratio requirement. Thus, OEA's failure to staff the Klamath Lake and North Bend field offices per the staffing ratio violates the Award. PSO's first claim for relief therefore survives with respect to the Klamath Lake and North Bend field offices so long as they remain open and in violation of the Award.

### B.    Exhaustion of Parties' Established Grievance Procedures

OEA next contends that PSO should seek dispute resolution for the aspects of its complaint alleging that closure of the field offices constitutes a violation of the Agreement. Motion, #7, 14. OEA cites to *Republic Steel Corp. V. Maddox*, to contend that private dispute resolution is the appropriate forum for PSO's claim. 379 U.S. 650 (1975). *Republic Steel* effectively created a federal labor law exhaustion rule, requiring parties with contract disputes to pursue established grievance procedures as an initial mode of redress. *Id.* at 653.

In its complaint, PSO alleges that OEA "is violating the grievance and arbitration provision of the parties' collective bargaining agreement by refusing to implement the January 9, 2014 arbitration award." Complaint, #1, ¶ 14. PSO "further alleges OEA's announced closure of offices, and marketing and sale of assets, when those offices are the subject of the arbitration award, violates the parties' collective bargaining agreement." *Id.*

If PSO continues to maintain that OEA's closure of field offices, and marketing and sale

of assets, violates the parties' collective bargaining agreement, further grievance and arbitration

will be required to resolve that dispute.

## CONCLUSION

Based on the foregoing, OEA's motion to dismiss (#7) is granted as it applies to the

Chintimini, Eastern Oregon, and Roseburg field offices.  OEA's motion is denied as to the

Klamath Lake and North Bend offices and PSO's claim for relief therefore survives with respect

to those offices.  OEA is further ordered to comply with the Award's staffing ratio so long as the

Klamath Lake and North Bend offices remain open.

IT IS SO ORDERED.


Dated this 14th day of November, 2014.


Honorable Paul Papak
United States Magistrate Judge